## HILL v. BISHOP.

*(Supreme Court, General Term, Fifth Department. January 22, 1892.)*

UNLAWFUL FISHING—ACTION FOR PENALTY.

Laws 1887, c. 623, imposes penalties for taking fish from a pond which has been laid out, under the provisions of the statute, as a private park for propagating and protecting fish. Section 1, cl. 1, provides that the persons who may lay out such a park are the owners or lessees of land, or lands and water, or any person or corporation "having the exclusive right to shoot or hunt thereon or fish therein." Plaintiff sought to lay out a park which included the whole of a pond, whereas it appeared that the margin of the pond on two sides, down to low-water mark, was owned by other persons, and that, when the water arose above such mark, there was a portion of the pond in which plaintiff had no right to fish. *Held,* that plaintiff did not have such exclusive control of the waters of the pond and the land beneath them as the statute required.

Appeal from circuit court, Cayuga county.

Action by Ira W. Hill against Robert H. Bishop to recover certain penalties. Plaintiff appeals from a judgment dismissing his complaint. Affirmed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*D. L. Hurlbut,* for appellant. *A. J. Parker,* for respondent.

DWIGHT, P. J. The action was to recover penalties imposed by the statute (Laws 1887, c. 623) for taking fish from a pond which the plaintiff had sought to lay out as a private park for propagating and protecting fish, under the provisions of the statute cited. We think the first conclusion of law of the learned trial court is supported by the facts, which were agreed upon, and that such conclusion supports the judgment appealed from. That conclusion is to the effect that the plaintiff had not, at the time he instituted proceedings for the laying out and designating a private park, "such exclusive ownership or control over the waters [of the pond] and the land underneath the same" as is required by the terms of the statute in question, in order to entitle him to take such proceedings, and to acquire the privileges to be secured thereby. The statute is penal in its character, and requires to be strictly construed. By the first clause of its first section it defines the persons, whether individuals or corporations, who may take such proceedings and acquire such privi-

leges, to be the owners or lessees of land, or lands and water, or any person or corporation, etc., "having the exclusive right to shoot or hunt thereon or fish therein." The plaintiff's proceedings to lay out and designate his private park included the whole of the pond in question, whereas his lease, under which alone he claimed the right to take such proceedings, included, on two sides of the pond, which was in nearly a square form, only the waters thereof, and the land under the water, up to low-water mark. The findings of the court are in the language of the statement of facts agreed upon between the parties, and one of those findings is as follows: "That the plaintiff did not lease the lands west of the pond or marsh, nor the land east of the pond, said land being owned by other parties, and running to low-water mark." Conceding, therefore, all that is claimed by him as to the title of his lessor, and that he took by his lease the water and land under water in the main body of the pond, it yet appears that the margin of the pond on two sides, down to low-water mark, was owned by other persons. This fact, we think, clearly excludes the plaintiff from the category of the persons entitled to apply the provisions of the act of 1887 to the pond in question. He was neither the owner nor the lessee of the whole of the pond, nor a person having the exclusive right to fish therein. The body of water in question was separated only by a narrow bar of sand and gravel from the waters of Lake Ontario, and was connected with those waters by a channel from 15 to 20 rods wide, and from 1 to 8 feet deep. It was therefore subject to the rise and fall of the waters of the lake, as well as to the fluctuation of a considerable stream which emptied into it on the south side. What was the extent of its variation in height is not stated, but, to whatever extent it was accustomed to rise above low-water mark, to that extent there was a portion of the waters of the pond and of the land underneath the same of which the plaintiff was neither owner nor lessee, and in which he had not only no exclusive right to fish, but no right at all; the exclusive right to fish therein being the property of the several owners of the soil down to low-water mark. See Ang. Tide-Waters, 105; *Trustees* v. *Strong*, 60 N. Y. 56, 65,—in which the principle is stated and discussed that the right of exclusive or several fishery in any waters depends upon the ownership of the soil beneath such waters; that on fresh-water rivers such several right belongs to the owner of the adjoining land on either side, because it is presumed that his title extends to the thread of the stream, and that upon tide-waters the rule is otherwise, because his title extends only to high-water mark. "But," says the court in the case cited, "if the title to the soil under the water is obtained, there is no reason why the same right of fishery would not attach as to fresh waters, subject, of course, to the superior right of navigation." Of course, the same principle must apply to the case of all the waters of this pond standing above low-water mark, and give to the owners of the adjoining lands a several right of fishery therein. This, it seems to us, is quite sufficient to defeat the claim of the plaintiff to the exclusive right to fish in the pond to which he has sought to apply the provisions of the act of 1887, and thus to defeat the application of those provisions. In this view we find the first conclusion of law of the trial court well founded, and that it supports the judgment dismissing the plaintiff's complaint.

The judgment should be affirmed. All concur.