(8 App. Div. 15)

### PEOPLE v. HALL.

(Supreme Court, Appellate Division, Fourth Department. June 17, 1896.)

1. GAME LAW—PRIVATE PARK—POSTING NOTICE.
      Laws 1892, c. 488 (Game Law) § 212, provides that a person desiring to devote lands or lands and water to the propagation of fish or game may publish a notice describing the premises and declaring that they will be used as a private park for the purpose of propagating and protecting fish and game. Sections 213, 214, provide for posting notices on the land, but do not expressly require the notices so posted to state the purpose for which the land is to be used. *Held*, that the posted notices must nevertheless state the purpose for which the lands are to be used.

2. SAME—EVIDENCE.
      The owners of premises, claiming that they had devoted the same to the purpose of propagating fish and game, testified that they had inclosed the premises for hunting purposes, and that they had sold to about 10 persons the privilege of shooting on the land, reserving the right to shoot there themselves. The only evidence of any act done towards propagating fish or game was that the pond had been stocked with carp about five years before, but no quantity was specified. *Held*, that the evidence was insufficient to show that the lands and water were devoted to such purpose.

Appeal from court of sessions, Seneca county.

Thomas Hall was convicted of the crime of shooting wild ducks on lands used as a private park, in violation of Laws 1892, c. 488 (Game Law); and from the judgment of conviction he appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Frank S. Coburn, for appellant.
Hammond & Hammond, for respondent.

GREEN, J. The defendant was convicted of the crime of shooting wild ducks upon certain lands and water claimed to have been devoted and used as a private park, for the purpose of propagating and protecting fish, birds, and game, "without the consent of the owner or person having the exclusive right to shoot, hunt, or fish thereon." The prosecution and conviction seem to have been based exclusively upon sections 212–215, 217, c. 488, Laws 1892, as amended by chapter 573, Laws 1893. It is so stated in the respondent's brief, and so it would appear from the printed case; and it is not contended that the appellant was guilty of violating sections 210 and 211, relating to trespassing upon "inclosed or cultivated land for the purpose of shooting or hunting any game." The affidavit of Edward Lay, upon which the warrant was issued, stated that

the lands were "partially inclosed"; and he testified that his lands consisted of 106 acres of marsh, swamp, and water, and 85 acres of upland. "We pasture the marsh land in the summer time, and we have inclosed the marsh and water for hunting purposes. The marsh part is fenced down the water." Hiram Lay testified that the lands were fenced on the north, south, and west, but not on the east; that the fence was for keeping cattle off the hard land, and was there before the passage of this statute. But the contention upon this appeal is that the lands were regularly devoted and used as a private park, for the purpose of propagating and protecting fish, birds, and game; but this is controverted by the appellant, and that is the main question to be considered and determined. Is the respondent's contention supported by adequate proof of user for the purposes of propagating and protecting birds and game?

The "private park or territory" claimed by the complainants consists of about 250 acres, about 106 or 125 acres being of marsh, swamp, and water, the body of water being designated as Black lake or pond, and connected by an outlet into Seneca river. At times the low lands would be covered by overflow water from Seneca river, and at other times the water would be so low that the pond would be greatly reduced from its normal size, by reason of low water. Evidence was given tending to show title in the prosecutors of the land surrounding and under the said pond, except a part of a small cove on the extreme southern edge of the pond, and said to contain one-half or three-quarters of an acre of land. Edward Lay testified that, before he put up the signboards, everybody hunted and fished on that lake or pond, and have done so as long as he could remember, without hindrance from him; and that there are about 50 acres of marsh land between the hard land and the pond; that in time of high water the marsh and swamp lands are covered with water, also the lands belonging to Carey, Hammond, and Charles Lay; that "the identity of the lake is lost in time of high water. I do not know just where the lines are. I don't know the exact location of the north line of lot 63. The lake and marsh is all one body of water in time of high water. The water in the lake rises as the water in the river rises. The lake connects with an inlet and outlet. The water rises in the river first, and sets back in the lake. There are springs in the lake. In time of low water the water runs from the lake to the river." A witness (Carey) called by defendant testified that he owned lands north of the complainants'; that a "slank" of the lake runs up into his land at time of medium water, 50 or 60 rods; that he shot and fished on the waters covering his land in the spring of the year, to the knowledge of the complainants; that he has known of 50 acres of his land covered with water four feet deep in the spring of the year; that there are times when the lake is fed by waters from the river, and times when it is not; that a south wind raises the water in the lake and marshes; that the inlet is not a very large body of water, and is not fed by the spring; that this "slank" is a low piece of land, and in low places the water cannot get out, and the low places are sometimes connected with the lake, and sometimes not. Hall testified that

the lake is fed from the river in high water, but at times it gets so dry that there is but little water in it. This is about all the material evidence that is necessary to be presented in the determination of the matters in controversy. The defendant was shooting on a small island in about the center of the pond. Respondent says that the complainants do not claim the exclusive right to the whole of Black lake, but only to exclude people from the lands described by them in their published notice, and no more; that they make no claim to hunt or fish in the cove referred to, situated at the extreme southerly point of the lake; that it is no part of the lake proper.

By section 212, c. 488, Laws 1892, it is provided that:

"A person owning or having the exclusive right to shoot, hunt or fish on lands, or lands and water, desiring to devote such lands, or lands and water, to the propagation or protection of fish, birds or game, may publish in a paper printed in the county within which such lands, or lands and water, are situate, a notice substantially describing the same and containing a clause, declaring such lands or lands and water will be used as a private park for the purpose of propagating and protecting fish, birds and game."

Sections 213 and 214 provide for posting notices or signboards upon the premises.

By section 215:

"Upon compliance with the foregoing provisions for preventing trespassing or for devoting lands to propagation of fish, birds and game, no person shall disturb or interfere in any way with the fish or wild birds or wild animals while on the premises so protected, except with the consent of the owner or person having the exclusive right to shoot, hunt or fish thereon."

By section 217, as amended by chapter 573, Laws 1893, any violation of the provisions of this article is made a misdemeanor; and, in addition, the violator is subject to exemplary damages, in an amount not less than $15, nor more than $25, in addition to the actual damage sustained by the owner or lessee.

By section 245, any person convicted of a misdemeanor under the provisions of this chapter shall be punished by a fine of not less than $10, or be imprisoned in the county jail or penitentiary for a period of not less than one day, nor more than at the rate of one day for every dollar of such fine, or by both such fine and imprisonment.

It is not disputed but that the complainants fully complied with the statutory requirements as to publication in the newspaper, and also placed signboards warning trespassers. The purpose of this statute is to make it a criminal offense, and therefore an offense against the people at large, for one to enter upon the lands of another, who has complied with the conditions prescribed, for the purpose of shooting wild birds or animals, or of fishing in the pond, lake, or streams thereon. Evidently, the provisions referred to are of a highly penal character, and, by all canons of construction, they must be strictly construed, and not be extended by implication. The leading rule of construction of statutes is, of course, to ascertain fairly the intention of the legislature; but in statutes giving a penalty, if there be a reasonable doubt of the case, made upon the trial or in the pleadings, coming within the statute, the

party of whom the penalty is claimed is to have the benefit of such doubt. Chase v. Railroad Co., 26 N. Y. 525.

A preliminary question arises as to whether the signboards placed upon the private park or territory should contain a notification of the fact that the lands or lands and water are devoted to the purpose of propagating and protecting fish, birds, and game, or whether a simple notice warning all persons from trespassing upon the lands or water is a sufficient compliance with the statute. It will be, observed that the notice required to be published in the newspaper (of which one publication is sufficient) must expressly declare that such lands or lands and water will be used as a private park, for the purpose of propagating and protecting fish, birds, etc. In addition to that, the statute requires the placing of notices or signboards "warning all persons against trespassing thereon"; that is to say, upon such private park or territory. It would seem to be a fair and reasonable interpretation of the statute that the signboards should give notice that it is a private park, as well as warning all persons against trespassing thereon. If the lands are "inclosed or cultivated," and signboards are posted warning against trespassing, that is sufficient to make the trespasser a criminal, by virtue of sections 210 and 211 of the statute. But, if they are not so inclosed or cultivated, the notice should substantially state that it is a private park, etc., for the propagation of fish, etc., or in other equivalent words. The "warning" must be that it is a private park, etc., and that trespassing is forbidden.

Authority is not wanting for the adoption of such a construction of the statute. The game laws of Pennsylvania provide that:

"Any person trespassing on any lands, for the purpose of taking fish from any private pond, stream or spring, after public notice on the part of the owner or occupant thereof, such notice being posted adjacent to such pond * * *: provided, however, this section shall apply only to such ponds, streams, or springs as shall be used or improved by the owners or lessees for the propagation of fish or game." Act June 3, 1878, § 21.

Notwithstanding the particular form or character of the notice is not prescribed by the statute, the court held that a notice warning, "All persons are hereby notified not to trespass on these lands, or fish in this pond, under penalty of the law," is not sufficient, but that the notice must indicate that such pond was a private pond, used or improved for the propagation of fish. Benscoter v. Long, 157 Pa. St. 209, 216, 218, 224, 27 Atl. 674; Reynolds v. Com., 93 N. Y. 458.

Another matter for determination is whether such lands or lands and water were actually "used as a private park for the purpose of propagating and protecting fish, birds, and game," as required by the statute. The evidence is insufficient to show that the lands or waters were used or devoted for any such purpose, within the true intent and meaning of the statute. The notice published in the newspaper is dated October 13, 1893. The witness Edward Lay, who is one of the prosecutors, testified that "they put a rack in the pond after putting in carp, and it was taken down, but they could not find out who took it down; also, that we have inclosed

the marsh and water for hunting purposes." Hiram Lay testified that the rack was put in the channel about five years ago, before the notices were published. On cross-examination, he said that the lake "has been" stocked with carp. "I have sold leases to parties to hunt on this land. There is a party that has leased the land, and has the privilege to shoot and hunt there for three years. We have let it to about ten persons and ourselves. We only reserved the right to shoot in the lake, so that, if we wished to, we could take a party in there to shoot. We or they could permit any reasonable number to go in there and shoot. The company made their own rules as to whom they should permit to go and hunt in the lake." It is to be inferred from this that the owners leased their lands to a hunting or hunting and fishing club, and thus devoted their lands to the purpose of hunting and fishing. This is hardly consistent with the idea of propagating and protecting wild birds or game. Indeed, there is no evidence of any act done for the purpose of such propagation and protection; and the only evidence of any act done towards propagating fish is that the lake or pond was stocked with carp about five years ago, but no quantity is specified. This will not do. That is not a sufficient compliance with the requirements of the statute, and the owners or lessees are not entitled to its protection against interference with their hunting and fishing. The main or principal purpose to which the lands and waters are devoted and used is that of hunting and fishing, and not for the purpose of propagating and protecting fish, birds, or game. In a prosecution under the Pennsylvania statute, the court, in charging the jury, said that they must first inquire whether the pond was "used or improved by the owner for the propagation of fish." "What evidence is there that it was so improved? What improvements for the propagation of fish were put upon this pond? Propagation of fish means the increase and spread by artificial and natural means, by the spawn and by the placing of fish in the pond. Is there any evidence that he did anything to improve the pond for that purpose? The court does not remember any evidence of that kind. You will then inquire, also, whether it was used by him for the propagation of fish? On that branch of the case, what was done? He testified that several years ago he purchased and stocked this pond with 115 black bass and other sorts of fish, so that it would seem to a certain extent that he stocked the water. The evidence is that the fish did propagate, and that there were black bass and other fish in the pond on the 5th of September, 1889, and for a short time before that. The stocking of this pond, and the care which he says he exercised over it afterwards, is perhaps sufficient to warrant the jury in finding that it was used by him for the propagation of fish." Upon appeal, the court observed that the testimony of the plaintiff was insufficient to warrant the jury in finding such use or improvement of the pond as is necessary to bring the case within the statute; that it practically amounted to nothing. Benscoter v. Long (Pa. Sup.) 27 Atl. 674. It is true that the defendant here is not charged with fishing in a private pond or lake devoted and used for the propaga-

tion and protection of fish. Still, the decision quoted is not without application to the case brought up for review. The principle of that adjudication is that, where a statute requires that the lands or lands and water shall be used for a specified purpose,—whether for the propagation and protection of fish, or of wild birds or game,—the evidence of user for propagating purposes must be ample and sufficient to warrant a conviction. Here there is but very slight evidence tending to show that the lake or pond was used, or intended to be used, for propagating fish, while there is no evidence whatever of any act done for the propagation of wild birds or game, or for their protection and preservation. The public declaration and notice of the owners that they devoted the lands and waters for both these purposes is false as to both.

Appellant also contends that, even though the proprietors of this pond had actually devoted and used the waters for the primary purpose of propagating and protecting fish, they could not claim for it as a private pond, under the provisions of the statute; that, to bring the case within the statute, the whole of the pond must be so far private property as to confine therein the fish with which it is stocked; that the ownership of a part only of the land covered by the water is not sufficient to give to the whole water the distinctive character of private; that the question is not whether the complainants have rights which may be trespassed upon, but is the whole body of water private, within the meaning of the statute? It is argued that the complainants must show exclusive right to fish in these waters, and this they did not have, because it appears that in time of high water there are several persons owning land in the vicinity who have the right to fish therein; then, again, a portion of the waters of this pond enters into the cove owned by one Hammond; the nature of this body of water is such that the idea of propagating and protecting fish is entirely out of the question, because at time of high water the identity of the lake is lost, and it becomes a part of the river. There is much to be said in favor of this contention (see Reynolds v. Com., and Benscoter v. Long, supra; Hill v. Bishop [Sup.] 17 N. Y. Supp. 297); but it is unnecessary for the decision of this appeal to determine the matter. Nor are we called upon to determine whether, under the provisions of the statute, this property could be devoted and used as a private park or territory for the propagation and protection of wild birds and game, for there is no evidence that it was used for any such purpose, or for the propagation of fish, subsequent to the publication of the declaration and notice.

Assuming that the conviction was legal and proper, the judgment is clearly erroneous. The judgment imposes a fine of $10 and costs, amounting to $20.91, and directs that the defendant "stand committed until the same be paid, not exceeding thirty days." Such a judgment plainly violates the provisions of section 245 of the statute, quoted above.

Judgment reversed, and defendant discharged.

HARDIN, P. J., and FOLLETT, J., concur. ADAMS and WARD, JJ., concur in result.